**Record No. 14-1130**

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

KEANNA LOMAX,

ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED,

*Plaintiff - Appellant,*

v.

WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.,

*Defendant - Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

### OPENING BRIEF OF APPELLANT

E. David Hoskins
Max F. Brauer
THE LAW OFFICES OF
E. DAVID HOSKINS, LLC
16 E. Lombard Street, Suite 400
Baltimore, MD 21202
(410) 662-6500
davidhoskins@hoskinslaw.com
maxbrauer@hoskinslaw.com

*Counsel for Appellant*
*Keanna Lomax*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-1130         Caption: Keanna Lomax v. Weinstock, Friedman & Friedman

Pursuant to FRAP 26.1 and Local Rule 26.1,

Keanna Lomax
(name of party/amicus)


who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: ___February 12, 2014___

Counsel for: _Appellant, Keanna Lomax_____

## CERTIFICATE OF SERVICE
****************************

I certify that on ___February 12, 2014___ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Kevin Patrick Farrell, Esquire
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
Suite 400
700 11th Street, N.W.
Washington, D.C. 20001

_____          ___February 12, 2014___
        (signature)                         (date)

- 2 -

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ................................................................. ii

JURISDICTIONAL STATEMENT ....................................................... 1

STATEMENT OF ISSUE PRESENTED FOR REVIEW ....................... 1

STATEMENT OF THE CASE .............................................................. 1

SUMMARY OF ARGUMENT .............................................................. 4

ARGUMENT ...................................................................................... 6

    A.   STANDARD OF REVIEW ....................................................... 6

    B.   DISCUSSION OF ISSUES ....................................................... 6

          I.   THE PLAIN LANGUAGE OF THE ARBITRATION CLAUSE SPECIFICALLY EXCLUDES THE CLAIMS MADE BY MS. LOMAX AGAINST WEINSTOCK ........................ 6

         II.  WEINSTOCK IS A NON-SIGNATORY TO THE RISC AND MAY NOT ENFORCE THE ARBITRATION CLAUSE ................. 17

CONCLUSION .................................................................................... 16

REQUEST FOR ORAL ARGUMENT ................................................. 16

CERTIFICATE OF COMPLIANCE .................................................... 17

CERTIFICATE OF SERVICE ............................................................. 18

ADDENDUM ...................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

Am. Bankers Ins. Group v. Long,
    453 F.3d 623 (4th Cir. 2006) .................................................................... 13, 14

Arthur Andersen LLP v. Carlisle,
    556 U.S. 624, 129 S. Ct. 1896, 173 L.E.2d 832 (2009) ................................... 8

Bailey v. ERG Enterprises, LP,
    705 F.3d 1311 (11th Cir. 2013) ......................................................... 12, 13, 15

Bass v. E.I. DuPont de Nemours & Co.,
    324 F.3d 761 (4th Cir. 2003) ......................................................................... 6

Becker v. Davis,
    491 F.3d 1292 (11th Cir. 2007) .................................................................... 13

Brantley v. Republic Mortgage Insurance Co.,
    424 F.3d 392 (4th Cir. 2005) ............................................................ 11, 12, 14

Cheek v. United Healthcare of the Mid-Atlantic, Inc.,
    378 Md. 139, 835 A.2d 656 (2003) ................................................................. 8

Evans v. B.F. Perkins Co., a Division of Standex Intern. Corp.,
    166 F.3d 642 (4th Cir. 1999) ......................................................................... 6

First Options of Chicago, Inc. v. Kaplan,
    514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) ............................... 8

Gardner v. Ally Financial Inc.,
    430 Md. 515, 61 A.3d 817 (Md. 2012)............................................. 2, 3, 10, 15

Griggs v. Evans,
    205 Md. App. 64, 43 A.3d 1081 (Md. Ct. Spec. Ap. 2012) ............. 8, 9, 10, 11

Hertz Corp. v. Friend,
    130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010)...................................................... 9

Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.,
    659 F.2d 836 (7th Cir.1981)) ............................................................11

In re Humana,
    285 F.3d at 971 (11th Cir. 2002) ..................................................13

Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,
    206 F.3d 411 (4th Cir. 2000) ..........................................................7

Long v. Silver,
    248 F.3d 309 (4th Cir.2001) ......................................................9, 11

Monroe v. City of Charlottesville, Va.,
    579 F.3d 380 (4th Cir. 2009) ..........................................................6

R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.,
    384 F.3d 157 (4th Cir.2004) ..........................................................14

Rent-A-Center, West, Inc. v. Jackson,
    561 U.S. 63, 130 S. Ct. 2772 (2010) ...............................................6

Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,
    10 F.3d 753 (11th Cir.1993) ....................................................10, 11

Thomson-CSF, S.A. v. Am.erica Arbitration Ass'n,
    64 F.3d 773 (2d Cir.1995) .............................................................11

Westmoreland v. Sadoux,
    299 F.3d 462 (5th Cir.2002) .........................................................11

## STATUTES

15 U.S.C. § 1692 et seq. ...................................................................1
15 U.S.C. § 1693, et seq. ..................................................................1
28 U.S.C. § 1291 .........................................................................1, 2
28 U.S.C. § 1331 ............................................................................1

Md. Code Ann., Com. Law § 12-108 ..............................................14

Md. Code Ann., Com. Law § 13-101 et seq ............................................................1

Md. Code Ann., Com. Law § 14-201 et seq ............................................................1

**RULES**

Fed. R. Civ. Proc. 12(b)(1) ...........................................................................6

Fed. R. Civ. Proc. 12(b)(6) ...........................................................................6

## JURISDICTIONAL STATEMENT

This appeal is taken from an order issued by the Honorable Catherine C. Blake of the District of Maryland. The Amended Class Action Complaint filed by the Plaintiff alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201 et seq., and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 et seq. The basis for the District Court's subject matter jurisdiction is federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1693, et seq.

The basis for appellate jurisdiction is 28 U.S.C. § 1291. A final appealable order was issued on January 15, 2014. JA 57. Plaintiff filed a timely Notice of Appeal on February 11, 2014. JA 58.

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

Did the District Court err in concluding that a valid arbitration agreement existed when the agreement specifically excluded non-signatory, third party debt collectors, and the Plaintiff and the original creditor intentionally chose not to include the debt collector in a previous arbitration?

## STATEMENT OF THE CASE

Ms. Lomax and the Class she seeks to represent are consumers whose motor vehicle purchases were financed through credit contracts, but whose vehicles were

1

repossessed and ultimately sold by the credit provider. JA 13, ¶ 2. Maryland law establishes statutory requirements for providing notice in connection with the repossession and sale of the vehicles purchased by Ms. Lomax and the Class. Id. The information to be disclosed differs significantly depending upon whether the repossessed vehicle is sold at a public auction or at a private sale. Id. If the statutory notice requirements are fulfilled, the credit provider may sue the borrower for any deficiency remaining on the credit contract after the proceeds from the auction or sale are applied to the balance. Id. If the requirements are not fulfilled, the credit provider is prohibited from suing the borrower for any deficiency. Id.

Defendant Weinstock, Friedman & Friedman P.A. ("Weinstock") is a debt collecting law firm that was retained to bring suits to recover credit contract deficiencies remaining after the vehicles owned by Ms. Lomax and the Class were repossessed and sold at an auction held at Manheim Baltimore Washington ("Manheim"). JA 13, ¶ 3. At the time of the sales of the repossessed vehicles, the credit grantor assumed, incorrectly, that the Manheim auction constituted a public sale and did not provide the statutory notice required for private sales to Ms. Lomax and the Class. Id.

On March 1, 2013, the Maryland Court of Appeals issued its opinion in Gardner v. Ally Financial Inc., 430 Md. 515, 61 A.3d 817 (Md. 2012), and ruled as

a matter of law that the auctions held by Manheim are not public sales because Manheim charges individuals wishing to attend and observe the sale a refundable cash deposit of $1,000.00, which restricted access to the sales. JA 13-14, ¶ 4. The result of this ruling was that credit grantors who had sold repossessed vehicles at the Manheim auctions up to that point, but who had not provided the statutory notice required for a private sale, were no longer legally entitled to collect any deficiency remaining after the proceeds of the sale were applied to the loan balance. JA 14, ¶ 5.

Although many debt collecting law firms immediately dismissed lawsuits that were pending when the Gardner ruling was issued, Weinstock continued to pursue litigation against unsuspecting consumers despite having actual knowledge that there was no legal basis for the claims it was asserting on behalf of credit grantors. JA 14, ¶ 6.

Ms. Lomax previously asserted a claim in a proceeding before the American Arbitration Associating ("AAA") against Credit Acceptance Corporation ("Credit Acceptance"). JA 24, ¶ 42. Neither party to that arbitration elected to add Weinstock as a party to the dispute between them. Id.

This arbitration was authorized by the Retail Installment Sales Contract ("RISC"), which provided in relevant part:

**AGREEMENT TO ARBITRATE**

> This Arbitration Clause describes how a Dispute (defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in a court in front of a judge and/or jury. In this Arbitration Clause, "we" and "us" mean Seller and/or Seller's Assignee, Credit Acceptance Corporation, or their employees, agents or assignees or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract, if such third party is named a party between you and us. . . .

JA 24, ¶ 43.

That claim was settled. JA 25, ¶ 45.

Plaintiff filed a Class Action Complaint on May 16, 2013, JA 2, and an Amended Class Action Complaint on August 14, 2013. JA 12-46. Weinstock filed a motion to dismiss or, in the alternative, to stay the action and compel arbitration on July 29, 2013. JA 4-6. The District Court granted the motion on January 15, 2014, and dismissed the case without prejudice to permit arbitration. JA 57. Ms. Lomax filed a timely Notice of Appeal on February 11, 2014. JA 58.

**SUMMARY OF ARGUMENT**

The District Court erred because the plain language of the arbitration agreement specifically excludes claims against third parties retained to collect debts unless the debt collector is made a party to a dispute between the signatories to the contract or their assignees. In this case, Ms. Lomax and Credit Acceptance

4

used arbitration to resolve a dispute between them and intentionally chose not to make Weinstock a party to that dispute.

The District Court also erred because a non-signatory to the arbitration agreement can compel arbitration in two limited circumstances that are not present in this dispute.

The first circumstance occurs if the arbitration clause is so broadly worded as to trigger the "significant relationship test." The claims asserted against Weinstock do not pass the significant relationship test because they do not rely on the terms of the RISC, but rather are statutory claims based solely upon Weinstock's decision to continue to collect a deficiency that had been extinguished by the Maryland Court of Appeal's <u>Gardner</u> decision.

The second circumstance arises under the doctrine of equitable estoppel, which does not apply here because Ms. Lomax is pursuing claims under three statutes — the FDCPA, MCDCA and MCPA — that are not referenced at all in the RISC. Ms. Lomax's claims relate to duties established by these statutes and not to duties established by the RISC.

Finally, there are no allegations in the Amended Complaint of concerted misconduct on the part of Weinstock and Credit Acceptance. The alleged misconduct at issue in this lawsuit is Weinstock's independent decision to continue

to collect deficiencies after the Maryland Court of Appeals ruled in <u>Gardner</u> that these deficiencies could not be collected.

## ARGUMENT

### A.   STANDARD OF REVIEW

Ms. Lomax appeals an order granting a motion under Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6).

"An order granting dismissal under Rule 12(b)(6) is reviewed de novo taking 'the factual allegations in the complaint as true.'" <u>Monroe v. City of Charlottesville, Va.</u>, 579 F.3d 380, 385 (4th Cir. 2009) (quoting <u>Bass v. E.I. DuPont de Nemours & Co.</u>, 324 F.3d 761, 764 (4th Cir. 2003)). A district court's dismissal of a case for lack of subject matter jurisdiction to Rule 12(b)(1) is also subject to de novo review. <u>Evans v. B.F. Perkins Co., a Div. of Standex Intern. Corp.</u>, 166 F.3d 642, 647 (4th Cir. 1999).

### B.   DISCUSSION OF ISSUES

#### I.   THE PLAIN LANGUAGE OF THE ARBITRATION CLAUSE SPECIFICALLY EXCLUDES THE CLAIMS MADE BY MS. LOMAX AGAINST WEINSTOCK.

Fundamentally an arbitration agreement is contractual in nature. <u>Rent-A-Center, West, Inc. v. Jackson</u>, 561 U.S. 63, 130 S.Ct. 2772, 2776 (2010) (observing that the "[Federal Arbitration Act] reflects the fundamental principle that arbitration is a matter of contract."). As a general matter, "arbitration is a matter of

contract [interpretation] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." <u>Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH</u>, 206 F.3d 411, 416 (4th Cir. 2000).

The District Court erred in ruling that the arbitration clause in the RISC applied to the dispute between Ms. Lomax and Weinstock because it failed to enforce the plain language of the clause that specified that a claim against a third party debt collector would be subject to arbitration only in a very narrow circumstance:

> In this Arbitration Clause, "we" and "us" mean Seller and/or Seller's Assignee, Credit Acceptance Corporation, or their employees, agents or assignees or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract, if such third party is named a party between you and us. . . .

JA 24, ¶ 43 (emphasis supplied); JA 11.[1]

The plain language of this clause provides that the only third parties who may enforce the clause are third parties "providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract, if such third party is named a party between you and us." JA 24, ¶ 43. Although, Weinstock was a third party providing services in connection with the

---

[1] For the convenience of the Court, an enlargement of an image of the best available copy of the arbitration clause available to Ms. Lomax is set forth as an addendum.

7

collection of amounts due under the contract, it specifically and intentionally was not named as a party by Credit Acceptance or Ms. Lomax in their dispute against each other. JA 24, ¶ 42.

## II.   WEINSTOCK IS A NON-SIGNATORY TO THE RISC AND MAY NOT ENFORCE THE ARBITRATION CLAUSE.

Under the Federal Arbitration Act, state law determines whether Weinstock can enforce the arbitration agreement in the RISC. <u>Arthur Andersen LLP v. Carlisle</u>, 556 U.S. 624, 129 S.Ct. 1896, 1904, 173 L.E.2d 832 (2009); <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); <u>Cheek v. United Healthcare of the Mid-Atlantic, Inc.</u>, 378 Md. 139, 147, 835 A.2d 656 (2003).

There are limited circumstances when a non-signatory to an arbitration clause can compel arbitration of a signatory's claims against the non-signatory. The governing Maryland law on this issue is discussed in <u>Griggs v. Evans</u>, 205 Md. App. 64 (2012), a case that arose out of a loan refinancing. One of the mortgage instruments the Griggses executed contained a broad arbitration rider, providing "that disputes 'arising from or relating' to their agreement with Beneficial Mortgage, 'shall be resolved, upon the election of [either party] by binding arbitration.'" <u>Id</u>. at 69. As part of the refinancing, the Griggses also signed an application for a credit life insurance policy from Household Life Insurance

8

Company, one of the appellees before the Court of Special Appeals. Id. After Mr. Griggs died, Mrs. Griggs requested payment under the policy, but Household Life denied the request. When Mrs. Griggs sued Household Life and the individuals who had participated in the meeting where the policy was sold for breach of contract and insurance fraud, two of the individual defendants demanded arbitration and moved to dismiss citing the arbitration rider that was part of the mortgage lending agreement the Griggses had signed with Beneficial Mortgage. Id. at 70.

In reversing a trial court order compelling arbitration, the Court of Special Appeals explained that Maryland recognizes two circumstances when an arbitration agreement can be enforced by a non-signatory.

The first circumstance occurs if the arbitration clause is so broadly worded as to trigger the "significant relationship test:"

> According to that test, "when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained," those claims must be submitted to arbitration. Long v. Silver, 248 F.3d 309, 316 (4th Cir.2001), overruled on other grounds, Hertz Corp. v. Friend, 130 S.Ct. 1181, 1190–92, 175 L.Ed.2d 1029 (2010).

Griggs v. Evans, 205 Md. App. 64, 77, 43 A.3d 1081, 1088 (Md. Ct. Spec. Ap. 2012).

The Court of Special Appeals ruled that the claims against Household Life were not significantly related to the mortgage agreement because Household Life

was not involved in making the mortgage loan and the claims against Household Life were based solely on the conduct that induced the plaintiffs to purchase the credit life insurance. 205 Md. App. At 82, 43A.3d at 1092.

In this case, like <u>Griggs</u>, Weinstock had no involvement in making the automobile loan to Ms. Lomax. Additionally, the claims asserted by Ms. Lomax against Weinstock are not based on efforts to collect payments due under the RISC when the account was actively being serviced by Credit Acceptance. Rather, the claims are grounded on the factual assertion that Weinstock is attempting to collect debts that are no longer owed by the customers of Credit Acceptance as the result of the <u>Gardner</u> decision. Thus, while claims "in connection with the . . . collection of amounts due under the Contract" might arise under the RISC if they were claims relating to Credit Acceptance's collection of amounts due, the claims asserted against Weinstock do not pass the significant relationship test because they do not rely at all upon the terms of the RISC, but rather are based solely upon Weinstock's decision to illegally continue to collect a deficiency that had been extinguished by the <u>Gardner</u> decision.

The second circumstance when a non-signatory can enforce an arbitration clause arises under the doctrine of equitable estoppel. As explained in <u>Griggs</u>:

> The doctrine of equitable estoppel permits non-signatories to enforce an arbitration provision, first, when a signatory "must rely on the terms of the written agreement [containing the arbitration clause] in asserting [its] claims," <u>Sunkist Soft Drinks, Inc. v. Sunkist Growers,</u>

Inc., 10 F.3d 753, 757 (11th Cir.1993), and "seeks to claim the benefit of" such an agreement "while simultaneously attempting to avoid the terms of an arbitration provision contained therein," Long, supra, 248 F.3d at 320 (citation and quotation omitted); or, second, "when the signatory to the contract containing [an] arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non [-] signatory and one or more of the signatories to the contract," Westmoreland v. Sadoux, 299 F.3d 462, 467 (5th Cir.2002), or, more succinctly put, "when the issues the non[-]signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." Thomson–CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir.1995). The doctrine of equitable estoppel is rooted in the equitable principle that it would be unfair "for a party to 'rely on [a] contract when it works to its advantage, and repudiate it when it works to its disadvantage.' " Schmidt, 445 F.3d at 769 (quoting Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp., 659 F.2d 836, 839 (7th Cir.1981)).

205 Md. App. at 82-83, 43 A.3d at 1092.

In Griggs, the Court of Special Appeals ruled that the doctrine of equitable estoppel did not require arbitration because "none of the allegations in the instant case against any of the appellees implicates a breach of a duty arising from the agreement which contains the arbitration rider" and because "the Griggses' claims do not rely on their own rights or obligations under the Mortgage Agreement." Id. at 89, 43 A.3d at 1096.

In reaching this conclusion, the Court of Special Appeals relied upon this Court's decision in Brantley v. Republic Mortgage Insurance Co., 424 F.3d 392 (4th Cir. 2005). In that case, the Brantleys bought a home with the help of a mortgage obtained from SouthStar Funding, LLC and as part of that transaction

11

entered into a broadly worded arbitration agreement. SouthStar also required the Brantleys to purchase mortgage insurance from Republic Mortgage Insurance Company. The Brantleys later sued Republic claiming that Republic charged them higher insurance premiums based on information in their consumer credit reports but did not notify them of the fact, a possible violation of the Fair Credit Reporting Act (FCRA).

Republic moved to compel arbitration, the District Court denied the motion, and this Court affirmed the District Court's decision for three reasons. First, the statutory remedy provided by the FCRA was "wholly separate from any action or remedy for breach of the underlying mortgage contract that is governed by the arbitration agreement." 424 F.3d at 396. Second, although the mortgage insurance related to the mortgage debt, the premiums charged for the insurance — which formed the basis for the FCRA claim — were "separate and wholly independent from the mortgage agreement." Id. Finally, the claims at issue did not raise allegations of collusion or misconduct by the mortgage lender, but rather were "based entirely on actions taken" by the non-signatory to the arbitration agreement. Id.

The Eleventh Circuit reached a similar result in Bailey v. ERG Enterprises, LP, 705 F.3d 1311 (11th Cir. 2013). The plaintiffs in that case had purchased undeveloped lots in the Bahamas and sued non-signatories to the purchase

12

contracts alleging appraisal and other types of fraud. 705 F.3d at 1313. On appeal, the plaintiffs argued that the District Court incorrectly applied equitable estoppel to allow non-signatories to invoke the lot purchase contracts' forum-selection clauses because their claims did not rely on the lot purchase agreements. Id. at 1319-20. In reversing the District Court, the Eleventh Circuit articulated the following test:

> A party relies on the terms of a contract when the party needs the underlying contract to make out his or her claim against the non-signatory. In re Humana, 285 F.3d at 976. The signatory must attempt to hold the non-signatory to the terms of the contract. Becker, 491 F.3d at 1300.1213 A but-for relationship between the claims and the contract "alone is not enough to warrant equitable estoppel." Lawson, 648 F.3d at 1174. For a party's claims to rely on a contract, the party must actually depend on the underlying contract to assert the claims. In re Humana, 285 F.3d at 976. A simple but-for relationship does not constitute the actual dependence on the underlying contract that equitable estoppel requires.

Bailey v. ERG Enterprises, LP, 705 F.3d 1311, 1321-22 (11th Cir. 2013). The Eleventh Circuit reversed because the non-signatories' argument boiled down to a "but for" argument that "if the Buyers had not entered into the purchase contracts, they would not have suffered damages from the alleged fraud." Id. at 1322. Rejecting this argument, the Eleventh Circuit held that the forum selection clause did not apply to claims against the non-signatories because the plaintiffs were not seeking to hold the non-signatories to the terms of the lot purchase agreements. Id.

In this case, the District Court relied upon Am. Bankers Ins. Group v. Long, 453 F.3d 623 (4th Cir. 2006), a case in which the Longs were signatories to a

contract containing an arbitration clause but sued American Bankers Insurance Group, a non-signatory to the contract. The critical set of facts in <u>Long</u> were that the Longs' claims relied upon the terms of a promissory note that were incorporated by reference into the subscription agreement that contained the arbitration clause. 453 F.3d at 629. This Court distinguished those facts from the facts in <u>R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc</u>., 384 F.3d 157 (4th Cir.2004), where the non-signatory was not allowed to enforce the arbitration clause because the claims asserted were for negligence and breach of warranty and were not based on any breach of the contract that contained the arbitration clause.

The District Court erred because this case is strikingly similar to <u>Brantley</u> and <u>Griffin</u>, and does not fit under either prong of the equitable estoppel test. First, Ms. Lomax's claims are not based upon a breach of any term of the RISC. In holding that the choice of law term contained in the RISC was enough to trigger arbitration, the District Court misapplied <u>Am. Bankers</u> because Ms. Lomax is not pursuing an affirmative claim for breach of any contractual obligation established by the CLEC, or a claim brought under the civil liability provisions of CLEC, Md. Code Ann., Com. Law § 12-108, but rather is pursuing claims under three statutes — the FDCPA, MCDCA and MCPA — that are not referenced at all in the RISC. Thus, Ms. Lomax's claims, like the claims asserted in <u>Brantley</u> and <u>R.J. Griffin</u>, relate to duties established by these statutes and not duties established by the RISC

14

or CLEC.

Second, Ms. Lomax's claims relate only to the conduct of Weinstock and there are no allegations in the Amended Complaint of concerted misconduct on the part of Weinstock and Credit Acceptance. The conduct of Credit Acceptance alleged in the Amended Complaint is conduct in which Weinstock played no role, namely the decision to repossess Ms. Lomax's vehicle and sell it at a private sale without providing the required post sale disclosure. JA 19, ¶ 25-26; JA 22, ¶ 35. The only misconduct at issue in this lawsuit is Weinstock's decision to continue to collect deficiencies after the Maryland Court of Appeals ruled in Gardner that these deficiencies could not be collected.[2] In other words, Ms. Lomax's claims that Weinstock collected amounts that were not due under the RISC, JA 20, ¶ 28, are not based upon the terms of the RISC, but rather are based upon the Gardner ruling.

As in Bailey there is nothing more than a but-for relationship between the RISC and the allegations of misconduct on the part of Weinstock contained in the

---

[2] JA 23, ¶ 39 ("Once the Gardner opinion was issued, Credit Acceptance Corporation lacked legal authority to collect post repossession deficiencies in cases that were filed but not finally resolved before March 1, 2013, where the automobiles were sold at an auction held at Manheim Baltimore Washington because Credit Acceptance Corporation had not provided the required "private sale" notice); ¶ 40 ("Notwithstanding this fact, Weinstock continued in its attempts to collect a post repossession deficiency from Keanna Lomax by continuing to pursue the lawsuit it had brought against her.")

Amended Complaint. While it is true that had Ms. Lomax not entered into the RISC the circumstances giving rise to her Amended Complaint would never have transpired, that is not the appropriate test. In this case Ms. Lomax is not seeking to hold Weinstock to the terms of the RISC or to bring a claim under the CLEC.

## CONCLUSION

For the reasons stated, Ms. Lomax requests that the Court of Appeals reverse the order of the District Court granting the motion to compel arbitration and dismissing her case without prejudice and remand the case to the District of Maryland.

## REQUEST FOR ORAL ARGUMENT

Ms. Lomax requests oral argument because this case provides an important factual setting in which to consider the application of Fourth Circuit precedent relating to when a non-signatory to an arbitration agreement can compel arbitration and resolution of this issue to these facts will provide important guidance to the District Courts and litigants.

Respectfully Submitted,

/s/ E. David Hoskins
E. David Hoskins
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
Counsel for Appellant


/s/ Max F. Brauer
Max F. Brauer
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
Counsel for Appellant

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that:

1. This brief has been prepared with Word, using a proportionally spaced serif typeface, Times New Roman, 14 point font.

2. Exclusive of: table of contents; table of authorities; any addendum containing statutes, rules, or regulations; and the certificate of service this brief contains <u>3,931</u> words.

3. I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or copy of the word or line printout.

*<u>/s/ E. David Hoskins</u>*
E. David Hoskins
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
*Counsel for Appellant*

Max F. Brauer
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
*Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

On the 21st day of March, 2014, I filed the required copies of the foregoing OPENING BRIEF OF APPELLANT with the Clerk of Court via hand delivery and electronically using the CM/ECF system, which will send a notice of electronic filing to:

David M. Ross, Jr.
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
700 11th Street, NW, Suite 400
Washington, D C 20001
(202) 626-7687
david.ross@wilsonelser.com

*Counsel for Appellee*
*Weinstock, Friedman & Friedman, P.A.*

*/s/ E. David Hoskins*
E. David Hoskins
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21204

Max F. Brauer
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21204
*Counsel for Appellant*

# ADDENDUM
## (enlarged image of arbitration provision)

## AGREEMENT TO ARBITRATE

This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. In this Arbitration Clause, "we" and "us" mean Seller and/or Seller's Assignee, Credit Acceptance Corporation, or their employees, agents or assignees or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract if such third party is named as a party between You and us. "You" means the Buyer(s). A "Dispute" is any dispute, controversy or claim between You or us arising out of or in any way related to this Contract, or any default under the Contract, or the collection of amounts due under this Contract, or the purchase, sale, delivery, set-up, quality of the Vehicle, or any product or service included in this Contract. "Dispute" includes contract claims, and claims based on tort or any other legal theories. Either You or we may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes brought later in the lawsuit. A Dispute shall be fully resolved by binding arbitration. Judgment on the arbitration award may be entered in any court with jurisdiction. The arbitrator shall decide whether a particular Dispute is subject to arbitration and any question as to the enforceability of all or part of this Arbitration Clause. All statutes of limitation which otherwise would apply to an action brought in court will apply in arbitration. The Federal Arbitration Act governs this Arbitration Clause. You and we understand and agree that You and we choose arbitration instead of litigation to resolve Disputes. You and we voluntarily and knowingly waive any right to a jury trial. You and we agree that all Disputes must be resolved on an individual basis through arbitration and that representative actions, such as class actions, are prohibited and regardless of any statements in this Arbitration Clause that state otherwise, the validity and effect of the class action prohibition may only be determined by a court and not by an arbitrator. In the event that there is a conflicting agreement to arbitrate claims or disputes related to the purchase of the Vehicle, whether executed before, at the same time, or after the Arbitration Clause, the terms of this Arbitration Clause shall control any and all Disputes between You and us.

Notwithstanding the foregoing, we retain the right to repossess the Vehicle upon your default and to exercise any power of sale under this Contract. The institution and maintenance of any action for judicial relief or exercise of self-help remedies shall not waive the right to submit any Dispute to arbitration, including any counterclaim asserted in any such action, and including those controversies or claims arising from the exercise of any such judicial relief or the exercise of self-help remedies. If a demand for arbitration of any counterclaim is made, the entire Dispute shall be submitted to binding arbitration pursuant to this Arbitration Clause. If a party requests arbitration under this Contract the other party shall submit to arbitration any claim or counterclaim which such party may have against the requesting party, whether deemed to be compulsory or permissive in law. The failure to bring such a claim or counterclaim is a waiver of, and bars, the bringing of such a claim or counterclaim in any subsequent arbitration or legal action. You and we agree that if any provision of this Arbitration Clause other than the prohibition against representative or class actions is invalid or unenforceable under the Federal Arbitration Act or any other applicable law, the provision found to be invalid or unenforceable shall be inapplicable and deemed omitted, but shall not invalidate the remaining provisions of this Arbitration Clause, and shall not diminish the parties' obligation to arbitrate Disputes subject to the Arbitration Clause.

You or we may elect to arbitrate under the rules and procedures of either the National Arbitration Forum or the American Arbitration Association; however in the event of a conflict between these rules and procedures and the provisions of this Arbitration Clause, You and we agree that this Arbitration Clause governs for that specific conflict. You may obtain the rules and procedures, information on fees and costs (including waiver of the fees), and other materials, and may file a claim by contacting the organization of your choice. The addresses and websites of the organizations are: National Arbitration Forum, P.O. Box 50191, Minneapolis, Minnesota 55405, www.arb-forum.com; and American Arbitration Association, 335 Madison Avenue, Floor 10, New York, New York 10017-4605, www.adr.org. We agree for only the first day of arbitration to pay the following fees: (1) the arbitrator's fee, plus (2) those reasonable arbitration expenses or costs (excluding attorney fees) assessed to You that You would not pay if You had brought a Dispute in court, plus (3) any other reasonable expense or cost unique to the arbitration process. We will also pay amounts that the arbitrator determines that we must pay in order to assure the enforceability of this Arbitration Clause. Arbitration will take place near where You signed this Contract. Notice of the time, date and location shall be provided to the parties under the rules and procedures of the arbitration organization You select.

Your Right to Reject: If You don't want this Arbitration Clause to apply, You may reject it by mailing us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice which describes the Contract and tells us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers and cosigners and the envelope that the rejection is sent in has a post mark of 14 days or less after the date of this Contract. If You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract.

It is expressly agreed that this Contract evidences a transaction in interstate commerce. The Arbitration Clause is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et. seq. ("FAA") and not by any state arbitration law.

20