No. 14-1130

# United States Court of Appeals for the Fourth Circuit

KEANNA LOMAX,
ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED,

*Plaintiff-Appellant,*

*v.*

WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the
District of Maryland at Baltimore in Case No. 1:13-CV-01443-CCB
(Hon. Catherine C. Blake, Judge)*

## BRIEF FOR APPELLEE

David M. Ross, Esq.
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
700 11th Street, NW, Suite 400
Washington, DC 20001
Telephone: 202-626-7687
Facsimile: 202-628-3606
david.ross@wilsonelser.com

*Counsel for Appellee Weinstock, Friedman & Freidman, P.A.*

APRIL 28, 2014

 COUNSEL PRESS                                    (888) 275-0668

764353v.2

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. <u>14-1130</u>    Caption: <u>Keanna Lomax v. Weinstock, Friedman & Friedman, P.A.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Weinstock, Friedman & Friedman, P.A.</u>
(name of party/amicus)

_____

 who is <u>          Appellee          </u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                          ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                        ☐ YES ☑ NO
       If yes, identify all such owners:

4.       Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.       Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.       Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/ David M. Ross                Date:   February 21, 2014

Counsel for: Weinstock, Friedman & Friedman

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on   February 21, 2014   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/ David M. Ross                    February 21, 2014
(signature)                           (date)

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES..................................................................1

STATEMENT OF THE CASE..................................................................2

STATEMENT OF THE FACTS .................................................................3

SUMMARY OF ARGUMENT ..................................................................5

ARGUMENT .................................................................................8

I.     STANDARD OF REVIEW ................................................................8

II.    APPLICABLE LAW AND PUBLIC POLICY FAVOR ARBITRATION ...9

III.   THE PLAIN LANGUAGE OF THE ARBITRATION CLAUSE
       INCLUDES WEINSTOCK AS AN ATTORNEY/AGENT ......................11

       A.   PLAINTIFF AGREES HER CONTRACT IS VALID AND
            CONTAINS A BINDING ARBITRATION AGREEMENT ..............11

       B.   BECAUSE IT ACTED AS AN AGENT OF CREDIT
            ACCEPTANCE, WEINSTOCK MAY ENFORCE THE
            ARBITRATION CLAUSE ..................................................12

       C.   PLAINTIFF RELIES ON AN INAPPLICABLE PART OF THE
            ARBITRATION CLAUSE ..................................................14

IV.    PLAINTIFF'S CLAIMS FALL WITHIN THE SCOPE OF THE
       ARBITRATION CLAUSE................................................................15

       A.   THE ARBITRATION CLAUSE COVERS ANY CLAIMS
            RELATED TO PLAINTIFF'S CONTRACT ........................15

       B.   PLAINTIFF'S CLAIMS ARISE FROM HER CONTRACT ..............16

V.     EVEN IF THE ARBITRATION CLAUSE DID NOT EXPRESSLY
       ENCOMPASS AGENTS LIKE WEINSTOCK, THE FIRM CAN
       INVOKE ARBITRATION ................................................................18

A.  WEINSTOCK CAN REQUIRE PLAINTIFF TO ARBITRATE
    HER CLAIMS BECAUSE THE CLAIMS BEAR A
    SIGNIFICANT RELATIONSHIP TO HER CONTRACT ................... 18

B.  THE DISTRICT COURT CORRECTLY CONCLUDED THAT
    PLAINTIFF IS EQUITABLY ESTOPPED FROM CLAIMING
    WEINSTOCK CANNOT INVOKE THE ARBITRATION
    CLAUSE ............................................................................................. 22

C.  THE CASES UPON WHICH PLAINTIFF RELIES SUPPORT
    THE DISTRICT COURT'S JUDGMENT AND THE
    SUBSTANCE OF ITS REASONING ................................................... 24

CONCLUSION ....................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

*Advance Fin. Co. v. Client Sec. Trust Fund,*
  652 A.2d 660 (Md. 1995) ...................................................................12

*Aggarao v. MOL Ship Mgmt. Co., Ltd.,*
  675 F.3d 355 (4th Cir. 2012) ...........................................................10

*Am. Bankers Ins. Grp. v. Long,*
  453 F.3d 623 (4th Cir. 2006) ........................................................8, 27

*Am. Express Co. v. Italian Colors Rest.,*
  133 S. Ct. 2304 (2013) ............................................................ 9, 10, 14

*Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.,*
  96 F.3d 88 (4th Cir. 1996) ............................................... 19, 20, 21, 25

*AT&T Techs., Inc. v. Commc'n Workers of Am.,*
  475 U.S. 643 (1986) ...........................................................................21

*Bailey v. ERG Enterprises,*
  705 F.3d 1311 (11th Cir. 2013) ........................................................26

*Biggus v. Ford Motor Credit Co.,*
  613 A.2d 986 (Md. 1992) ...................................................................16

*Brantley v. Republic Mortg. Ins. Co.,*
  424 F.3d 392 (4th Cir. 2005) ........................................................8, 24

*C.I.R. v. Banks,*
  543 U.S. 426 (2005) ...........................................................................12

*Cheek v. United Healthcare,*
  835 A.2d 656 (Md. 2003) ...................................................................10

*Credit Acceptance Corp. v. Lomax,*
  No. 0101002726422011 (District Court for Baltimore City) ............13

*Decohen v. Capital One, N.A.,*
  703 F.3d 216 (4th Cir. 2012) .............................................................16

*Epps v. JP Morgan Chase Bank, N.A.,*
   675 F.3d 315 (4th Cir. 2012) ...............................................................16

*First Fin. Ins. Co. v. Brumbaugh,*
   No. 12-2452, 2014 U.S. App. LEXIS 326 (4th Cir. Jan. 8, 2014) .......................8

*First Options of Chicago, Inc. v. Kaplan,*
   514 U.S. 938 (1995) ...........................................................................10

*Gardner v. Ally Fin. Inc.,*
   61 A.3d 817 (Md. 2013) ....................................................................3, 23

*Green Tree Fin. Corp.-Ala. v. Randolph,*
   531 U.S. 79 (2000) .............................................................................10

*Griggs v. Evans,*
   43 A.3d 1081 (Md. Ct. Spec. App. 2012) ..................... 18, 19, 22, 23, 24, 25, 26

*Hightower v. GMRI, Inc.,*
   272 F.3d 239 (4th Cir. 2001) ...............................................................15

*Howsam v. Dean Witter Reynolds, Inc.,*
   537 U.S. 79 (2002) .............................................................................10

*Kay v. Ehrler,*
   499 U.S. 432 (1991) ...........................................................................12

*Long v. Silver,*
   248 F.3d 309 (4th Cir. 2001) ..................................... 18, 20, 21, 22, 23

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983) ...............................................................................10

*Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers*
   *Union, AFL-CIO,* 430 U.S. 243 (1977) ..............................................10

*Patton v. Wells Fargo Fin. Md., Inc.,*
   No. 3-2013, 2014 Md. LEXIS 72 (Md. Feb. 24, 2014)......................................16

*R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.,*
   384 F.3d 157 (4th Cir. 2004) ..................................................... 24, 27

*Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,*
   10 F.3d 753 (11th Cir. 1993) ........................................................................ 22, 25

*United States v. Chapman,*
   593 F.3d 365 (4th Cir. 2010) ............................................................................12

*Wells v. Chevy Chase Bank,*
   768 A.2d 620 (Md. 2001) ..................................................................................14

## STATUTES

9 U.S.C. § 2 ..............................................................................................................9

Md. Code Ann., Comm Law § 12-1001 et seq. ......................................................3

Md. Code Ann., Comm Law § 12-1021(k) ................................................... 17, 20

## <u>STATEMENT OF THE ISSUES</u>

1. Plaintiff Keanna Lomax financed the purchase of a car with a loan obtained through a retail installment contract. Under the express terms of the contact, the parties agreed to arbitrate all disputes arising out of, or in any way related to, the contract. Plaintiff's claims are based on the commercial law statute the parties specifically elected as the governing law in the contract, and allegations regarding the collection of amounts due under the contract. Did the United States District Court for the District of Maryland properly find that the arbitration provision required her to pursue the claims through arbitration?

Answer:  Yes.

2. The arbitration provision expressly applies to the finance company and its agents. Appellee Weinstock, Friedman & Friedman, P.A. ("Weinstock") is a law firm that represented the finance company in an action that sought a deficiency judgment against plaintiff for amounts due under the contract. Plaintiff's claims against Weinstock are based on actions it took on behalf of its client. Did the District Court properly find that as an agent of the finance company, the law firm could invoke the arbitration provision and require plaintiff to pursue her claims against Weinstock through arbitration?

Answer:  Yes.

## **STATEMENT OF THE CASE**

Plaintiff's claims against Weinstock relate to a vehicle financing contract plaintiff entered into with Credit Acceptance Corporation. JA 18-23. When plaintiff fell behind on her payments, the car was repossessed and sold at an auction. *Id.* Plaintiff alleges that Credit Acceptance improperly sent her notices for a public sale of her repossessed vehicle, but that the applicable commercial law required it to send notices for a private sale. *Id.* Plaintiff contends that under the commercial law, because Credit Acceptance sent her the wrong notices, it could not pursue any deficiency from her after the vehicle's sale.

Credit Acceptance filed a deficiency action against plaintiff in which it was represented by Weinstock, its attorney/agent. JA 22. In response to that complaint, plaintiff invoked the arbitration provision in her contract and resolved her dispute with Credit Acceptance. JA 24-25.

In May 2013 plaintiff sued Weinstock, asserting a variety of claims based on the firm's pursuit of the deficiency action on behalf of Credit Acceptance. JA 12-46. In January 2014, the District Court granted Weinstock's Motion to Dismiss, or, in the Alternative, to Stay the Action and Compel Arbitration. JA 47-57. The Court found the arbitration provision expressly applied to agents such as Weinstock, that equitable estoppel required arbitration of plaintiff's claims, and that all of the claims fell within the scope of the arbitration provision and were significantly

related to her contract. JA 47-56. The Court accordingly dismissed this case without prejudice. JA 57.

### STATEMENT OF THE FACTS

In 2009, plaintiff financed the purchase of a car with a loan obtained through a contract with Credit Acceptance. JA 18-19. The contract expressly provides that its terms are governed by Maryland's Credit Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann., Comm. Law § 12-1001 *et seq.* JA 19. To secure the loan, plaintiff gave Credit Acceptance a security interest in the car. *Id.* Plaintiff alleges that after she fell behind on her monthly payments, Credit Acceptance repossessed the car and sold it at an auction. *Id.* The repossession sale did not satisfy her payment obligations under the contract, and in 2011 Credit Acceptance filed suit against her. Credit Acceptance retained Weinstock to represent it in the deficiency lawsuit. JA 19-22.

In March 2013, the Maryland Court of Appeals issued a decision finding that an auction that charged attendees a refundable $1,000 deposit rendered the auction sale a private sale instead of a public sale under CLEC. *Gardner v. Ally Fin. Inc.*, 61 A.3d 817 (Md. 2013). *See also* JA 22-23. Because her repossessed vehicle was allegedly sold at a similar auction, plaintiff alleges that Credit Acceptance violated CLEC by providing her with repossession notices for a public sale rather than the notices required for a private sale. JA 19-22. Plaintiff alleges that because the

3

notices she received were deficient under CLEC, Credit Acceptance should not have attempted to collect the deficiency owed on her contract after the repossession sale. JA 20-23.

Notwithstanding that her liability theory is premised on the allegation that Credit Acceptance provided insufficient repossession notices under CLEC, plaintiff sued Credit Acceptance's lawyer/agent, Weinstock. She alleges Weinstock violated the Fair Debt Collection Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Act ("MCDCA"), and the Maryland Consumer Protection Act ("MCPA"). She claims Weinstock violated these statutes by seeking on behalf of Credit Acceptance collection of post-repossession deficiencies despite having knowledge, post-*Gardner*, that plaintiff did not receive the proper repossession notices under CLEC and that CLEC therefore precluded the pursuit of any deficiency judgment. JA 19-23, 39-44.

Plaintiff's contract with Credit Acceptance contains a binding and enforceable arbitration clause under which plaintiff contractually agreed to arbitrate all disputes or claims related to the contract. JA 11, 24.[1] Plaintiff invoked this clause in asserting a claim against Credit Acceptance before the American Arbitration Association. JA 24-25. Plaintiff and Credit Acceptance thereafter settled that matter. *Id.*

---

[1] A reproduction of the entire arbitration clause is set forth as an addendum.

The arbitration clause applies to Credit Acceptance and its "agents." JA 11. The clause encompasses any dispute or claim "arising out of or in any way related to this Contract, or any default under this Contract, or the collection of amounts due under this Contract ...." *Id.* A dispute includes "claims based on tort or any other legal theories." *Id.*

The arbitration provision provides that Credit Acceptance retains "the right to repossess" plaintiff's vehicle upon her default "and to exercise any power of sale under this Contract." JA 11. The next sentence adds that the "institution and maintenance of any action for judicial relief or exercise of self-help remedies shall not waive the right to submit any Dispute to arbitration, including any counterclaim asserted in any such action, and including those controversies or claims arising from the exercise of any such judicial relief ..." *Id*

## SUMMARY OF ARGUMENT

Plaintiff is a signatory to a contract that includes a broad agreement to arbitrate. Because her claims fall within the scope of the arbitration provision and Weinstock can enforce the provision, the District Court's decision and order dismissing the complaint should be affirmed.

The District Court properly recognized that the arbitration clause expressly applied to Credit Acceptance's agents, which includes attorneys such as Weinstock, a law firm that brought the underlying collection action on behalf of

5

Credit Acceptance. JA 53. Plaintiff's causes of action against Weinstock are entirely based on the firm's actions in its capacity as Credit Acceptance's attorney/agent. *Id.* On appeal, plaintiff ignores this finding. Instead, she argues the District Court erred based on an analysis of a clause in the arbitration provision that is not even at issue – the provision that permits third parties named as a party between the contract signatories to compel arbitration. Plaintiff's Opening Brief ("Br.") at 2-3, 7-8.

Plaintiff concedes that a non-signatory to an arbitration agreement can compel arbitration under the significant relationship test or through equitable estoppel. Br. at 5-6. But plaintiff unpersuasively argues that the District Court erred in finding these circumstances were met.

Plaintiff argues her claims against Weinstock do not trigger the significant relationship test to permit Weinstock to invoke the arbitration clause. Br. at 5. The District Court properly found plaintiff's position does not withstand scrutiny. As a threshold matter, to argue CLEC precluded Credit Acceptance's deficiency action, plaintiff had to demonstrate that CLEC was expressly incorporated into and therefore governed her contract. JA 19, 55. Moreover, the arbitration clause uses broad language, applying to any claim "arising out of or related in any way to" the contract, default under the contract, and the "collection of amounts due" under the contract. JA 11, 54-55. Plaintiff alleges Weinstock attempted to collect a

deficiency to which Credit Acceptance was not entitled because the company had not properly complied with CLEC's notice requirements. JA 18-24, 55. Plaintiff's claims are focused on Credit Acceptance's conduct under the contract – its failure to provide proper repossession notices and attempt to collect a deficiency that plaintiff alleges it was not entitled to "under the loan agreement." JA 20, 55. These factual allegations control, not the labels and causes of action plaintiff layers onto these allegations. The District Court properly determined that plaintiff's claims fall within the scope of the arbitration agreement and that she must submit them to arbitration if she wishes to pursue them further.

Plaintiff also argues that equitable estoppel is inapplicable because her causes of action are statutory and not referenced in her contract. Br. at 5. This argument also fails. Plaintiff's contract selected CLEC as the governing law, and she alleges a breach of the obligations CLEC imposed on Credit Acceptance under her contract. JA 19-23, 53. She alleges that Weinstock, acting as Credit Acceptance's attorney agent, improperly attempted to collect deficient amounts owed under her contract. JA 19-23. Plaintiff cannot rely on her contract to attempt to collect damages from Weinstock and at the same time disclaim the contract's arbitration provision. JA 52-53. Plaintiff chose to enter into a contract with a broad arbitration provision. JA 11. She even relied on and invoked the provision in pursuing arbitration against Credit Acceptance. JA 24. The District Court properly

7

found that she is estopped from claiming Weinstock is not a proper party to the agreement and that Weinstock can invoke the arbitration clause.

Supported by the maxim that all doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, the District Court properly held that all of plaintiff's claims are subject to the arbitration agreement. The District Court's order dismissing the complaint should be affirmed.

## ARGUMENT

## I.    STANDARD OF REVIEW

The Fourth Circuit generally reviews "de novo the district court's decision on a petition to compel arbitration." *Am. Bankers Ins. Grp. v. Long*, 453 F.3d 623, 629 (4th Cir. 2006). "When, however, the district court's decision is based on principles of equitable estoppel," this Court reviews "the district court's decision for abuse of discretion." *Id.*; *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395 (4th Cir. 2005). *See also First Fin. Ins. Co. v. Brumbaugh*, No. 12-2452, 2014 U.S. App. LEXIS 326, at *7 (4th Cir. Jan. 8, 2014) (citing *Am. Bankers* to support abuse of discretion review of equitable estoppel application in context of insurance coverage obligation). A district court "abuses its discretion when it commits an error of law or clearly errs in making a finding of fact." *Am. Bankers*, 453 F.3d at 629.

The District Court's opinion concluded that "equitable estoppel provides a basis for Weinstock to enforce the arbitration agreement" between plaintiff and Credit Acceptance. JA 51. Thus, to the extent of this Court's review of the District Court's equitable estoppel decision, an abuse of discretion standard is appropriate. The District Court's remaining findings are subject to de novo review. Under either standard, the District Court's enforcement of the arbitration provision was correct and should be affirmed.

## II.    APPLICABLE LAW AND PUBLIC POLICY FAVOR ARBITRATION

The District Court's decision is consistent with the pro-arbitration position expressed in the applicable law and public policy.

Plaintiff's arbitration agreement provides that it is governed by the Federal Arbitration Act ("FAA"). JA 11. The FAA provides that a written arbitration clause contained in a contract evidencing a transaction involving commerce "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court pronounced that "arbitration is a matter of contract," and consistent with the text of the FAA, "courts must 'rigorously enforce' arbitration agreements according to their terms …." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (citations omitted). Such rigorous enforcement includes the terms that

specify with whom the parties choose to arbitrate their disputes, and the rules under which the arbitration will be conducted. *Id.*

The FAA establishes a strong federal policy in favor of enforcing arbitration agreements. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Maryland law is in accord. *Cheek v. United Healthcare of the Mid-Atlantic, Inc.*, 835 A.2d 656, 660 (Md. 2003) (the Maryland Uniform Arbitration Act "expresses the legislative policy favoring enforcement of agreements to arbitrate") (citation omitted). When a party seeking to compel arbitration proves that the parties entered into a valid arbitration agreement and the claim at issue falls within the scope of the agreement, courts should compel arbitration. *Howsam*, 537 U.S. at 83; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

The presumption in favor of arbitration can only be negated expressly or by clear implication. *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union, AFL-CIO*, 430 U.S. 243, 255 (1977). Any doubts regarding the arbitrability of claims must be resolved in favor of arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983); *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 368 (4th Cir. 2012). The Supreme Court has made clear that "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

The District Court properly relied on these principles as the foundation of its analysis, JA 50-51, and on appeal plaintiff fails to meet her burden to demonstrate that the District Court erred in enforcing her arbitration provision.

## III.    THE PLAIN LANGUAGE OF THE ARBITRATION CLAUSE INCLUDES WEINSTOCK AS AN ATTORNEY/AGENT

Plaintiff does not dispute the validity of her contract or that her arbitration clause is enforceable. The clause includes Weinstock as the attorney/agent of Credit Acceptance. Consequently, Weinstock did not have to rely on any "third party" language also set forth in the clause to argue the firm was covered by the arbitration provision.

### A.    PLAINTIFF AGREES HER CONTRACT IS VALID AND CONTAINS A BINDING ARBITRATION AGREEMENT

Plaintiff concedes that her contract contains a valid and binding arbitration agreement, and does not dispute the terms of that clause. In her complaint, plaintiff describes the "Agreement to Arbitrate contained in the Retail Installment Sales Contract signed by [plaintiff] KEANNA LOMAX," and states that she invoked the arbitration clause when she "asserted a claim against Credit Acceptance Corporation before the American Arbitration Association ('AAA')." JA 24. *See also* Br. at 3-4. Plaintiff concedes that dispute arbitration is "authorized" by the arbitration agreement, and quotes key language from the provision showing that it

encompasses "Credit Acceptance Corporation, or their … agents …" JA 23, Br. at

4.

**B.    BECAUSE IT ACTED AS AN AGENT OF CREDIT ACCEPTANCE, WEINSTOCK MAY ENFORCE THE ARBITRATION CLAUSE**

The District Court correctly found that plaintiff "is attempting to disclaim an

arbitration agreement that appears to clearly contemplate she will arbitrate disputes

with Weinstock," because her contract provides that Credit Acceptance's "agents

may require any 'Dispute' to be arbitrated." JA 53.[2] Plaintiff does not address,

much less challenge, the District Court's finding. As such, an independent basis

exists to support the enforcement of the arbitration clause.

Plaintiff also does not contest the District Court's recognition that courts

"have long recognized attorneys as their clients' agents." *Id. See, e.g., C.I.R.* v.

*Banks*, 543 U.S. 426, 436 (2005) ("The relationship between client and attorney ...

is a quintessential principal-agent relationship."); *Kay v. Ehrler*, 499 U.S. 432,

435-36 (1991) ("'attorney' assumes an agency relationship"); *United States v.*

*Chapman*, 593 F.3d 365, 370 (4th Cir. 2010) ("an attorney is the agent of his

client"); *Advance Fin. Co. v. Client Sec. Trust Fund*, 652 A.2d 660, 663 (Md.

1995) ("agents are lawyers whose principals are clients").

---

[2] The District Court set forth this aspect of its decision in a footnote, JA 53, and spent the bulk of its opinion addressing the significant relationship test and equitable estoppel, discussed below.

Weinstock indisputably acted as Credit Acceptance's agent in connection with the underlying deficiency lawsuit that is at issue in this case. The District Court recognized that "[b]y filing suit on its behalf, Weinstock was acting as [Credit Acceptance's] agent in [the deficiency] case, which Lomax appears to admit." JA 53. Plaintiff concedes Weinstock's status as Credit Acceptance's agent in her complaint, alleging that Weinstock is a "law firm that was retained to bring suits to recover credit contract deficiencies" remaining after plaintiff's repossessed vehicle was sold at auction, and "continued to pursue claims on behalf of Credit Acceptance ...." JA 13, 40. She cannot dispute that the collection lawsuit that is the subject of her complaint was filed by Weinstock as the attorney agent of Credit Acceptance. *See* JA 22-23. *See also* http://casesearch.courts.state.md.us (case listing for *Credit Acceptance Corp. v. Lomax*, No. 0101002726422011 (District Court for Baltimore City)).[3]

---

[3] The filing of *Credit Acceptance Corp. v. Lomax*, the underlying deficiency action, does not diminish Weinstock's right to demand arbitration. Rather, claims arising from such a filing are expressly contemplated in plaintiff's arbitration clause for resolution in arbitration. The clause provides that the "institution and maintenance of any action for judicial relief ... shall not waive the right to submit any Dispute to arbitration, including ... those controversies or claims arising from the exercise of any such judicial relief ...." JA 11. The clause further clarifies that "[i]f a party requests arbitration under this Contract the other party shall submit to arbitration any claim or counterclaim which such party may have against the requesting party ...." *Id.* Plaintiff does not argue that the deficiency action constituted a waiver of the right to arbitrate.

Weinstock is incorporated by reference as a party to the arbitration clause. Because plaintiff agreed that agents of Credit Acceptance such as Weinstock are parties to the arbitration agreement, the firm is entitled to enforce the arbitration clause. *See Am. Express*, 133 S. Ct. at 2309 (finding that rigorous enforcement of arbitration provisions includes the terms that specify with whom the parties choose to arbitrate their disputes); *Wells v. Chevy Chase Bank*, 768 A.2d 620, 630 (Md. 2001) (noting that "where language employed in a contract is unambiguous, a court shall give effect to its plain meaning and there is no need for further construction by the court").

## C.   PLAINTIFF RELIES ON AN INAPPLICABLE PART OF THE ARBITRATION CLAUSE

Plaintiff fails to address the clear inclusion in the arbitration clause of Weinstock as an "agent" of Credit Acceptance. Instead, plaintiff focuses solely on a separate part of the clause to argue that the District Court erred because Weinstock is not a "third party" that was "named as a party" by plaintiff or Credit Acceptance. Br. at 7-8.[4]

---

[4] Weinstock could also invoke arbitration pursuant to the language that provides the agreement applies to third parties providing services in connection with the collection of amounts due under the contract if "such third party is named as a party between You and us." JA 11. As an agent of Credit Acceptance, Weinstock is incorporated into the definition of "us." *Id.*

14

Weinstock's motion did not rely on, nor did it need to, the "third party" language in the clause. The "agent" language in the clause facially applies to Weinstock. And, as described below, the firm could also invoke arbitration given plaintiff's claims are significantly related to her contract and equitable estoppel applies. The District Court agreed. JA 51-55.

## IV.  PLAINTIFF'S CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION CLAUSE

Plaintiff's broad arbitration clause encompasses Weinstock and the claims at issue in this litigation. Her clause is implicated because her lawsuit against Weinstock involves allegations that arise from her contract.

### A.    THE ARBITRATION CLAUSE COVERS ANY CLAIMS RELATED TO PLAINTIFF'S CONTRACT

Plaintiff's arbitration clause is broad in scope and provides that any party subject to the clause can require arbitration of any dispute or claim arising out of or relating to her contract. JA 11. The clause broadly defines a "Dispute" to include any claim "arising out of or in any way related to this Contract, or any default under this Contract, or the collection of amounts due under this Contract .… 'Dispute' includes contract claims, and claims based on tort or any other legal theories." JA 11. Because plaintiff's claims are based on underlying CLEC allegations that implicate her rights and obligations under her contract, her default under the contract, and the collection of amounts due under the contract, her claims

15

should be submitted to arbitration. *See Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001) (once a court finds that a binding arbitration agreement exists between the parties and the dispute falls within the scope of that agreement, the dispute must be resolved in arbitration).

## B.    PLAINTIFF'S CLAIMS ARISE FROM HER CONTRACT

Plaintiff argues that her claims against Weinstock do not arise from her contract. Br. at 10, 14-16. But the complaint references and relies upon a valid contract. JA 18-19. She alleges that the contract designated CLEC as the governing law and that Credit Acceptance did not provide her with CLEC-compliant repossession notices. JA 19-22. Thus, the complaint refutes her argument on appeal. The District Court properly found that plaintiff cannot seek to avoid the arbitration provision while simultaneously seeking recovery based on the rest of the contract.

Vehicle purchases financed by an installment sale are governed by Maryland's Retail Installment Sales Act, unless an express written election is made in the contract to have CLEC govern. *Patton v. Wells Fargo Fin. Md., Inc.*, No. 3-2013, 2014 Md. LEXIS 72, at *4 (Md. Feb. 24, 2014). *See Decohen v. Capital One, N.A.*, 703 F.3d 216, 227 (4th Cir. 2012) (the election of CLEC in a contract is voluntary); *Biggus v. Ford Motor Credit Co.*, 613 A.2d 986, 994 (Md. 1992) ("If CLEC has been elected, only CLEC's repossession rules apply."). "[C]ompliance

with the CLEC is only mandatory to the extent that parties to a lending agreement agree to be bound by the CLEC." *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 328 (4th Cir. 2012). Plaintiff's contract explicitly elected CLEC to govern. JA 10, 23. If the contract did not include this provision, plaintiff would have no basis to allege that CLEC was violated.

Because of the alleged deficiencies in the notices, plaintiff alleges that Credit Acceptance should not have attempted to collect any deficiency owed on the contract after the repossession sale. JA 13, 23, 40. *See also* Br. at 7-8 (Weinstock provided "services in connection with the collection of amounts due under the contract"). Plaintiff alleges that because Credit Acceptance failed to provide her with the required CLEC notices for a private repossession sale, under CLEC § 12-1021(k) it "was not entitled to any deficiency judgment <u>under the loan agreement</u>." JA 20 (emphasis added). As the District Court recognized, the "loan and collection of a deficiency judgment are only subject to the CLEC" because plaintiff and Credit Acceptance "selected it as the governing law" in the contract. JA 53. Plaintiff's allegations, therefore, implicate the "arising out of" her contract, "default," and "collection of amounts due" language of her arbitration agreement. As such, "Disputes" are arbitrable under the clause. JA 11.

## V.    EVEN IF THE ARBITRATION CLAUSE DID NOT EXPRESSLY ENCOMPASS AGENTS LIKE WEINSTOCK, THE FIRM CAN INVOKE ARBITRATION

Weinstock can enforce the arbitration agreement because the firm is expressly encompassed by the "agent" language in the clause and plaintiff's factual allegations implicate the clause's definition of "Dispute." But even if the clause did not contain the term "agent," Weinstock could invoke arbitration because plaintiff's claims bear a significant relationship to her contract. Plaintiff is also equitably estopped from relying on her contract to attempt to collect damages from Weinstock and at the same time disclaim the contract's arbitration provision.[5]

### A.    WEINSTOCK CAN REQUIRE PLAINTIFF TO ARBITRATE HER CLAIMS BECAUSE THE CLAIMS BEAR A SIGNIFICANT RELATIONSHIP TO HER CONTRACT

Plaintiff acknowledges that a nonsignatory to a contract can enforce an arbitration clause "when a significant relationship exists between the asserted claims and the contract in which the arbitration clause is contained." Br. at 9, quoting *Griggs*, 43 A.2d at 1088 (citations and quotations omitted). Plaintiff's claims directly arise from her contract (as demonstrated above). At a minimum, the

---

[5] The District Court found that regardless of whether federal or state law applies, equitable estoppel provides a basis for Weinstock to enforce the arbitration agreement. JA 51. *See, e.g., Griggs v. Evans*, 43 A.3d 1081, 1088, 1092 (Md. Ct. Spec. App. 2012) (discussing significant relationship test and equitable estoppel and citing *Long v. Silver*, 248 F.3d 309, 316, 320 (4th Cir. 2001)).

claims are "significantly related" to her contract, and the District Court properly found that Weinstock can enforce the arbitration clause.

Plaintiff argues that under *Griggs,* she is not required to arbitrate her claims. Br. at 9-10. *Griggs* involved an allegedly fraudulent credit life insurance application, and the life insurance policy contained an integration clause and no arbitration agreement. *Id.*, 43 A.2d at 1087-88. When parties sought to invoke the arbitration clause contained in a separate mortgage document, the *Griggs* court unsurprisingly rejected this effort. *Id.* at 1088-92. The *Griggs* court found that the "Griggses' claims do not rely at all on the terms of the Mortgage Agreement, the contract which includes the broadly worded arbitration rider. Rather, their claims — breach of the insurance policy and insurance fraud — are based solely on the terms of the optional credit life insurance contract and the circumstances surrounding the formation of that contract." *Id.* at 1090. The *Griggs* court concluded that "claims arising under a contract, which is transactionally related to another contract containing a broadly worded arbitration clause, are not necessarily 'significantly related' to the contract containing that arbitration clause." *Id.*

By contrast, here only one document is at issue - plaintiff's contract. Plaintiff's factual allegations and claims arise under her contract, not a separate agreement, and her arbitration agreement is contained in that contract.

Plaintiff asserts that her claims are not significantly related to her contract but instead "are based solely upon Weinstock's decision to illegally continue to collect a deficiency." Br. at 10. The District Court properly rejected this argument.

The District Court noted that to satisfy the significant relationship test, the claims do not have to implicate the terms of the underlying contract. JA 54, citing *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996). The determination turns on the factual allegations, not the legal labels attached to the claims. *Id.* at 93. The District Court found that plaintiff's claims were significantly related to her contract for several reasons (JA 55):

(1) Her factual allegations almost entirely related to Credit Acceptance's conduct under her contract – its failure to provide proper notices and collect a deficiency judgment (JA 19-24);

(2) Her allegation is that Credit Acceptance was "not entitled to any deficiency judgment under the loan agreement" (JA 20); and

(3) As a threshold matter, for Credit Acceptance's alleged failure to comply with CLEC to provide a possible basis for recovery, she had to demonstrate that her contract provided that CLEC governed (JA 19).

The CLEC provision that is the foundation of all of plaintiff's causes of action provides that "the lender shall not be entitled to any deficiency judgment to which he would be entitled *under the loan agreement*." JA 20, citing Md. Code Ann., Comm. Law § 12-1021(k)(4) (emphasis added). That her FDCPA, MCDCA

and MCPA causes of action are not referenced in her contract, Br. at 14, is irrelevant. Plaintiff's factual allegations and the CLEC law upon which she bases her claims are significantly related to her contract. *See Long v. Silver*, 248 F.3d at 318 (ordering arbitration because "proof of Long's claim will necessarily depend upon the terms" of the contract at issue). *See also Am. Recovery*, 96 F.3d at 93-95 (holding that when the proof of the claim is rooted in the existence or terms of the agreement, the agreement is significantly related to the claim).

The Supreme Court dictates that "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation omitted). Further, the presumption in favor of arbitrability "is particularly strong when the arbitration clause in question is broad," *id.* at 657, as it is in this case. Plaintiff's arbitration clause broadly requires arbitration of any "dispute, controversy or claim" "arising out of or in any way related to" the contract. JA 11. *See Long v. Silver*, 248 F.3d at 316-17 (finding that an arbitration clause that applied to any dispute "arising out of or relating to" the contract is broad, and therefore "it is not inconsistent with the intentions of the parties" to give the clause "broad effect"); *Am. Recovery*, 96 F.3d at 93 (holding

that an arbitration clause that provided arbitration for any dispute that "arose out of or related to" the agreement was a broad clause, "capable of expansive reach").

For these reasons, the complaint's allegations are related to plaintiff's contract and the District Court properly enforced the arbitration clause in the contract.

## B.    THE DISTRICT COURT CORRECTLY CONCLUDED THAT PLAINTIFF IS EQUITABLY ESTOPPED FROM CLAIMING WEINSTOCK CANNOT INVOKE THE ARBITRATION CLAUSE

Plaintiff recognizes that a nonsignatory can enforce an arbitration clause under the doctrine of equitable estoppel. Br. at 10. She quotes the *Griggs* court's determination that equitable estoppel permits nonsignatories to enforce an arbitration provision "when a signatory must rely on the terms of the written agreement containing the arbitration clause in asserting its claims and seeks to claim the benefit of such an agreement while simultaneously attempting to avoid the terms of an arbitration provision contained therein .…" *Id.*, 43 A.2d at 1092 (quotations omitted), citing *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993) and *Long v. Silver*, 248 F.3d at 320.

As discussed above, plaintiff's lawsuit is based on alleged violations of CLEC, a statute that was expressly incorporated into the governing contract. She contends that Weinstock was attempting to collect disputed amounts due to Credit Acceptance under her contract. JA 13, 20, 23, 40. *See also* Br. at 7-8. Plaintiff

alleges that she invoked the arbitration agreement against Credit Acceptance, did not attempt to add Weinstock to the arbitration, and Weinstock is therefore not entitled to arbitration. JA 24-25. Plaintiff seeks to claim the benefit of her contract by alleging that the *Gardner* decision showed that since her contract elected CLEC, Credit Acceptance's repossession notices violated CLEC, and allegedly precluded a deficiency judgment pursuant to CLEC.[6] JA 19-23. She further touts that she benefitted from the arbitration agreement in her contract by arbitrating a claim against Credit Acceptance. JA 24. Yet she is inequitably attempting to avoid the terms of the same arbitration agreement when it is invoked by Weinstock.

Weinstock can rely on the "agent" language that expressly incorporates it into the arbitration agreement. But even if the contract did not have such language, this case presents a textbook fact pattern for application of estoppel. *See also Griggs*, 43 A.2d at 1092 ("the doctrine of equitable estoppel is rooted in the equitable principle that it would be unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage") (citation and quotation omitted). The District Court properly found that plaintiff is

---

[6] The precise issue in *Gardner* involved CLEC. That court was asked, through a certified question from the Fourth Circuit, whether two auction sales constituted public or private sales under CLEC. *Id.*, 61 A.3d at 818. The entire *Gardner* decision addresses CLEC. Thus, plaintiff's argument that she is relying on *Gardner* to bring her claims but her claims do not "relate to duties" established by CLEC, Br. at 10-15, is baseless, given her causes of action are entirely reliant on CLEC.

estopped from claiming Weinstock is not a proper party to the agreement, and Weinstock can invoke the arbitration clause.

### C. THE CASES UPON WHICH PLAINTIFF RELIES SUPPORT THE DISTRICT COURT'S JUDGMENT AND THE SUBSTANCE OF ITS REASONING

Plaintiff ignores the realities of her allegations, the relevance of her contract, and the CLEC claims that permeate her complaint. Instead, she argues that the different circumstances in *Griggs*, *Brantley*, and *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.*, 384 F.3d 157 (4th Cir. 2004), justify reversing the District Court. Br. at 11-14. Plaintiff's arguments are a sideshow, as these cases actually support the District Court's finding.

In *Griggs* and *Brantley*, consumers entered into a transaction with an entity that did not include an arbitration provision, and the entity attempted to rely on the consumers' contracts with a separate entity that included a provision. *See Griggs*, 43 A.2d at 1091 (credit life insurance policy not related to mortgage agreement that contained arbitration provision); *Brantley*, 424 F.3d at 394 (mortgage insurance premiums separate and independent from mortgage agreement). Here there is only one contract and the deficiency action at issue sought amounts owed under that contract. Plaintiff's argument that her claims are not based on her contract or CLEC, Br. at 12-16, is inconsistent with her complaint, as the District Court recognized. JA 51-55.

Plaintiff asserts that she is not pursing a CLEC claim, but rather is suing for FDCPA, MCDCA, and MCPA claims. Incredibly, she argues that her claims relate to duties established by these statutes "and not duties established" by her contract or CLEC. Br. at 14-15. But without her contract's express incorporation, CLEC would not apply. Without CLEC, she would have no basis to allege that Credit Acceptance provided her with the wrong notices under CLEC. She would also have no basis to rely on a CLEC provision to argue that Credit Acceptance, or Weinstock as its attorney agent, could not collect any deficiency she still owed on her contract. Without her contract or CLEC, her causes of action would be based on nothing and the *Gardner* decision would be wholly irrelevant. *See Am. Recovery Corp.*, 96 F.3d at 93 (factual allegations, not legal labels, matter); *Sunkist*, 10 F.3d at 758 ("it is well established that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract"). The *Sunkist* court noted that "[a]lthough Sunkist does not rely exclusively on the license agreement to support its claims, each claim presumes the existence of such an agreement." *Id.* The same circumstances are presented here.

Further, in *Griggs* the court observed that the complaint did not allege any wrongdoing by the mortgage company that was the signatory to the mortgage agreement, which contained the arbitration provision. *Id.* 43 A.2d at 1096. Plaintiff's complaint here alleges wrongdoing by Credit Acceptance, leading her to

invoke the contract's arbitration provision against Credit Acceptance. JA 19-24. Finally, the *Griggs* court noted that "where courts have permitted a non-signatory agent to enforce an arbitration agreement executed by his principal, the claims must relate to the agent's actions on behalf of the principal to trigger the arbitration agreement." *Id.* 43 A.2d at 1097. Weinstock is being sued for pursuing a deficiency action in the name of and as the attorney agent of its client, Credit Acceptance. Thus, further grounds exist to affirm the District Court's opinion.

Plaintiff also cites to *Bailey v. ERG Enterprises*, LP, 705 F.3d 1311 (11th Cir. 2013), a case that involved a forum selection clause (not an arbitration provision). Br. at 12-13. That court found that plaintiff land buyer would still be able to bring appraisal fraud claims against the mortgage lender even if the land seller contract signatory "had performed all of its obligations" under the contract. *Id.* at 1318. Here, plaintiff could not have brought her claims if Credit Acceptance had adhered to the repossession notices required for the contract or had chosen not to pursue any contractual deficiency against plaintiff. The *Bailey* court also noted that a "party relies on the terms of a contract when the party needs the underlying contract to make out his or her claim against the non-signatory." *Id.* at 1321. *See also Griggs*, 43 A.2d at 1092 (equitable estoppel applies "when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed") (citation omitted). Plaintiff here needs her

contract to make her underlying CLEC claims, and the prosecution of a deficiency action, for which she sues Weinstock, involved the collection of deficient amounts owed under her contract which necessarily implicates her contract.

Plaintiff's argument she can avoid arbitration because she does not bring a breach of contract claim is unavailing. Br. at 14. The District Court properly determined that plaintiff "does not have to make a breach of contract claim in order to be estopped from disclaiming the arbitration provision of the contract." JA 51, citing *Am. Bankers*, 453 F.3d at 627-28. *See also R.J. Griffin*, 384 F.3d at 164 (stating that a party may not use "artful pleading to avoid arbitration").

## **CONCLUSION**

The judgment should be affirmed.

April 28, 2014                                     Respectfully submitted,


                                                   /s/ David M. Ross
                                                   David M. Ross, Esq.
                                                   WILSON ELSER MOSKOWITZ
                                                   EDELMAN & DICKER LLP
                                                   700 11th Street, NW, Suite 400
                                                   Washington, DC 20001
                                                   Telephone: 202-626-7687
                                                   Facsimile: 202-628-3606
                                                   Email: david.ross@wilsonelser.com

                                                   *Counsel for Appellee Weinstock,*
                                                   *Friedman & Friedman, P.A.*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34, Appellee Weinstock, Friedman & Friedman, P.A. does not request oral argument. The clear applicability of the arbitration provision to which Appellant Keanna Lomax contractually agreed is aptly set forth in the District Court's opinion and herein.

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains <u>6,221</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using the Microsoft Word program Times New Roman font, type 14 point.

April 28, 2014                          /s/ David M. Ross

                                             David M. Ross, Esq.

# United States Court of Appeals
# for the Fourth Circuit

*Keanna Lomax v Weinstock, Friedman & Friedman, P.A.*, No. 14-11430

## <u>CERTIFICATE OF SERVICE</u>

I, Catherine B. Simpson, being duly sworn according to law and being over the age of 18, upon my oath depose and say that: Counsel Press was retained by WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP, attorneys for Appellee to print this document.  I am an employee of Counsel Press.

On **April 28, 2014**, counsel for Appellee has authorized me to electronically file the foregoing **Brief of Appellee** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> E. DAVID HOSKINS
> MAX F. BRAUER
> THE LAW OFFICES OF DAVID
> HOSKINS, LLC
> 16 E. Lombard Street, Suite 400
> Baltimore, MD 21202
> (410) 662-6500
> davidhoskins@hoskinslaw.com
> maxbrauer@hoskinslaw.com

Additionally, 2 paper copies will be sent via third party commercial carrier to the above counsel on this date. Unless otherwise noted, 8 paper copies have been hand delivered to the Court.

April 28, 2014                                              */s/  Catherine B. Simpson*
                                                                   Counsel Press

764353v.2

# ADDENDUM

<u>AGREEMENT TO ARBITRATE</u>

This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. In this Arbitration Clause, "we" and "us" mean Seller and/or Seller's Assignee, **Credit Acceptance Corporation, or their employees, agents** or assignees or any third party providing any goods of services in connection with the origination, servicing and collection of amounts due under the Contract if such third party is named as a party between You and us. "You" means the Buyer(s). **A "Dispute" is any dispute, controversy or claim between You or us arising out of or in any way related to this Contract**, or any default under this Contract**, or the collection of amounts due under this Contract**, or the purchase, sale, delivery, set-up, quality of the Vehicle, or any product or service included in this Contract. **"Dispute" includes** contract claims, **and claims based on tort or any other legal theories**. **Either You or we may require** any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes brought later in the lawsuit. A Dispute shall be fully resolved by binding arbitration. Judgment on the arbitration award may be entered in any court with jurisdiction. The arbitrator shall decide whether a particular Dispute is subject to arbitration and any question as to the enforceability of all or part of this Arbitration Clause. All statutes of limitation which otherwise would apply to an action brought in court will apply in arbitration. The Federal Arbitration Act governs this Arbitration Clause. You and we understand and agree that You and we choose arbitration instead of litigation to resolve Disputes. <u>You and we voluntarily and knowingly waive any right to a jury trial</u>. You and we agree that all Disputes must be resolved on an individual basis through arbitration and that representative actions, such as class actions, are prohibited and regardless of any statements in this Arbitration Clause that state otherwise, the validity and effect of the class action prohibition may only be determined by a court and not by an arbitrator. In the event that there is a conflicting agreement to arbitrate claims or disputes related to the purchase of the Vehicle, whether executed before, at the same time, or after the Arbitration Clause, the terms of this Arbitration Clause shall control any and all Disputes between You and us.

Notwithstanding the foregoing, we retain the right to repossess the Vehicle upon your default and to exercise any power of sale under this Contract. **The institution and maintenance of any action for judicial relief or exercise of self-help remedies shall not waive the right to submit any Dispute to arbitration, including any counterclaim asserted in any such action, and including those controversies or claims arising from the exercise of any such judicial relief** or the exercise of self-help remedies. If a demand for arbitration of any counterclaim is made, the entire Dispute shall be submitted to binding arbitration pursuant to this Arbitration Clause. **If a party requests arbitration under this Contract the other party shall submit to arbitration any claim or counterclaim which such party may have against the requesting party, whether**

764353v.2

**deemed to be compulsory or permissive in law.** The failure to bring such a claim or counterclaim is a waiver of, and bars, the bringing of such a claim or counterclaim in any subsequent arbitration or legal action. You and we agree that if any provision of this Arbitration Clause other than the prohibition against representative or class actions is invalid or unenforceable under the Federal Arbitration Act or any other applicable law, the provision found to be invalid or unenforceable shall be inapplicable and deemed omitted, but shall not invalidate the remaining provisions of this Arbitration Clause, and shall not diminish the parties' obligation to arbitrate Disputes subject to this Arbitration Clause.

You or we may elect to arbitrate under the rules and procedures of either the National Arbitration Forum or the American Arbitration Association; however in the event of a conflict between these rules and procedures and the provisions of this Arbitration Clause, You and we agree that this Arbitration Clause governs for that specific conflict. You may obtain the rules and procedures, information on fees and costs (including waiver of the fees), and other materials, and may file a claim by contacting the organization of your choice. The addresses and websites of the organizations are: National Arbitration Forum, P.O. Box 50191, Minneapolis, Minnesota, 55405, www.arb-forum.com; and American Arbitration Association, 335 Madison Avenue, Floor 10, New York, New York 10017-4605, www.adr.org. We agree for only the first day of arbitration to pay the following fees: (1) the arbitrator's fee, plus (2) those reasonable arbitration expenses or costs (excluding attorney fees) assessed to You that You would not pay if You had brought a Dispute in court, plus (3) any other reasonable expense or costs unique to the arbitration process. We will also pay amounts that the arbitrator determines that we must pay in order to assure the enforceability of this Arbitration Clause. Arbitration will take place near where You signed this Contract. Notice of the time, date and location shall be provided to the parties under the rules and procedures of the arbitration organization You select.

Your Right to Reject: If You don't want this Arbitration Clause to apply, You may reject it by mailing us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice which describes the Contract and tells us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers and cosigners and the envelope that the rejection is sent in has a post mark of 14 days or less after the date of this Contract. If You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract.

It is expressly agreed that this Contract evidences a transaction in interstate commerce. The Arbitration Clause is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et. seq. ("FAA") and not by any state arbitration law.

JA 11, Br. at 20 (emphasis added via bolded text; underline in original).